# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### (GREENSBORO DIVISION)

FILED
FEB 15 2022
IN THIS OFFICE
Clerk U.S. Dist. Court
Greensboro, N.C.
By

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>DONAVON DEWAYNE CRAWFORD, §<br>§<br>Defendant. §<br>_____/ | Case No. 12-CR-00039-WO-1 |

## DONAVON DEWAYNE CRAWFORD'S MOTION FOR A SENTENCE REDUCTION AND/OR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

Comes now, Donavon Dewayne Crawford, the undersigned defendant, appearing in a pro se capacity[1], pursuant to 18 U.S.C. § 3582(c)(1)(A) and the *First Step Act of 2018*, respectfully moves the court for a sentence reduction and/or compassionate release for the extraordinary and compelling reasons presented herein.

## INTRODUCTION

United States Code Title 18, Section 3582(c)(1)(A), as amended by the *First Step Act* and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

---

[1] In light of his pro se status, Crawford respectfully asks the Court to give this motion a liberal construction in accordance with the doctrine articulated by the Supreme Court in *Haines v. Kerner*, 404 U.S. 519 (1972).

Case 1:12-cr-00039-WO   Document 71   Filed 02/15/22   Page 1 of 14

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon

motion of the defendant after the defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment (and may impose a term of probation or supervised release with or

without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a) to the

extent they are applicable, if it finds that -

(i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the court must consider the applicable factors set forth in section 3553(a) and the reduction must be "consistent with [the] applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A) ." *United States v. Burnell*, 837 Fed.Appx. 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280-83 (4th Cir. 2020)). Therefore, a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284.

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57(2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Compassionate

Case 1:12-cr-00039-WO   Document 71   Filed 02/15/22   Page 2 of 14

release is "an extraordinary and rare event." *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo. 2019). Crawford was sentenced, in the case at bar, to a term of 262 months' imprisonment. (Dkt. # 24).[2]

Crawford's sentence was driven, inter alia, by the career offender enhancement lawfully applicable at the time of his original sentencing. During the more than 10-years that have lapsed since Mr. Crawford's original sentencing, a lot of things have changed. Mr. Crawford's view and attitude reflect that he has taken this time to better himself and taken the steps which will help prepare him to be a productive law abiding citizen upon his release from prison.

Crawford submitted a request for a reduction in sentence and/or compassionate release to the warden of the Oklahoma City Federal Transfer Center on December 27, 2021.[3] More than 30 days have lapsed since the submission of Crawford's request and he has not received a response. Wherefore, this court has jurisdiction to entertain this motion and make a final determination on the merits thereof.

If Crawford were to be sentenced by the court today for his instant offenses, his sentencing guideline range would be 130-147 months; considering the fact he would no longer be subject to the career offender enhancement. Crawford's erroneously enhanced career offender sentence produces an unwarranted sentencing disparity under § 3553(a)(6) and this court should exercise its discretion to grant this motion and correct this injustice.

---

[2] References to the record are indicated as follows: (Dkt. # _____ ) refers to Crawford's underlying criminal docket Number 12-CR-00039-WO-1, followed by the appropriate docket entry number(s).
[3] In an abundance of caution, Crawford obtained a photo copy of his request which is being submitted with this motion as documentary evidence thereof. (SEE EXHIBIT # 1)

3

## STATEMENT OF THE CASE

### I.    *Procedural Background*

On February 27, 2012, a federal grand jury sitting in and for the Middle District of North Carolina returned an eight count indictment against Crawford, charging him with: possession with intent to distribute 24 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); maintaining a house for purpose of distributing a controlled substance in violation of 21 U.S.C. §§ 856(a)(1) and (b) (Count Two); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Three); convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Four); distribution of two grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Five); maintaining a house for purpose of distributing a controlled substance in violation of 21 U.S.C. §§ 856(a)(1) and (b) (Count Six); brandishing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Seven); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. # 1)

On May 9, 2012 Crawford entered a plea of guilty pursuant to a written plea agreement. (Dkt. ## 18, 19).

On November 21, 2012 the Court sentenced Crawford to an aggregate term of 262 months' imprisonment and five years supervised release. (Dkt. # 24).

Crawford sought appellate review from the Fourth Circuit Court of Appeal. The Fourth Circuit affirmed judgment of the district court on January 24, 2014. (Dkt. ## 35, 36, 37)

### II.    *Relevant Facts.*

Crawford was sentenced under the career offender guideline, pursuant to USSG § 4B1.1. This enhancement was based on, inter alia, Crawford's prior state of North Carolina conviction

4

for assault inflicting serious bodily injury. Crawford's assault conviction was determined to be a crime of violence under the now voided residual clause of the USSG.

Subsequent to the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the United States Sentencing Commission (USSC) revised the Sentencing Guidelines Manual, in response thereto, removing the residual clause "crime of violence" definition which was determined by the Supreme Court to be unconstitutionally vague in violation of due process.

This change in the definition of crime of violence has caused ripple effects in courtrooms across the country; with numerous defendants seeking and obtaining relief from their erroneously enhanced sentences. The court is charged with imposing sentences that are sufficient but not more than necessary to comply with the § 3553 factors. One of the main § 3553 factors instructs courts to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

If Crawford were to be sentenced today for his offenses of conviction, he would not face the extreme enhancement as a career offender; as he does not have the necessary violent prior convictions to lawfully sustain such an enhancement. In consequence, someone sentenced today for the same exact crimes as Crawford would be sentenced to an advisory guideline range of 130-147 months' imprisonment.

**ARGUMENT AND AUTHRITY**

I.     *The Extraordinary And Compelling Reasons Present In This Case Warrant A Reduction In Crawford's Sentence And/Or Compassionate Release.*

At the time of Crawford's sentencing, he was sentenced pursuant to the "career offender" guideline. Under the then-applicable sentencing guidelines, crimes of violence included "any offense under federal or state law" that "involve[s] conduct that presents a serious potential risk of physical injury to another." *See USSG* § 4B1.1(a).

5

The language used to categorize Crawford's prior state conviction for assault inflicting serious bodily injury under N.C. Gen. Stat. as a "crime of violence," the so called "residual clause," was once the subject of a considerable amount of litigation; swamping the courts with cases year-after-year.

Finally, the Supreme Court in *Johnson v. United States*, held the definition to be unconstitutional and voided the "residual clause" altogether. 135 S. Ct. 2551 (2015). The Sentencing Commission revised the definition of "crime of violence " in § 4B1.2(a), leaving the "force clause" unchanged but removing the so-called "residual clause" and adding in its place a number of enumerated offenses, including "aggravated assault ." *See* U.S.S.G. Supp. to App. C, Amend. 798 (eff. Aug. 1, 2016).

Because North Carolina assault inflicting serious bodily injury can be committed with a *mens rea* of "culpable negligence," it does not require the type of purposeful conduct necessary to satisfy the "force clause" used to define "crime of violence " in U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" to include any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

North Carolina law establishes that "[a] defendant ... must be charged with culpable negligence to be convicted on a culpable negligence standard," citing *State v. Stevens* , 228 N.C.App. 352 (2013), and *State v. Hines* , 166 N.C.App. 202, 600 S.E.2d 891, 896 (2004). Furthermore, *United States v. Barcenas-Yanez* , 826 F.3d 752 (4th Cir. 2016), established that the generic version of "the now-enumerated offense of 'aggravated assault ' " in revised § 4B1.2(a) also requires a *mens rea* greater than "recklessness." Id.

Under binding Fourth Circuit precedent, a crime of violence, for purposes of section 4A1.2(a) requires violent force, or "force capable of causing physical pain or injury to another

6

person." Aparicio-Soria, 740 F.3d at 154-55 (quotation omitted). This definition of violent force "specifically excludes from consideration 'the slightest offensive touching.'" Id. (quotation omitted).

In *Johnson I*, the Supreme Court discussed in great detail the distinction between the physical force needed for a "violent felony" vis-a-vis a "common-law misdemeanor." *Johnson I*, 559 U.S. at 140-42. The *Johnson I* Court noted that the "specialized meaning that ['force'] bore in the common-law definition of battery" consisted of "the intentional application of unlawful force against the person of another," including "the slightest offensive touching." Id.at 139. The Court rejected this application within the confines of the ACCA because of "the statutory category of 'violent felonies'" and held that the ACCA required "violent force." Id. at 140 (alteration omitted). The Fourth Circuit then adopted the Johnson I Court's force threshold for purposes of section 2L1.2(b)(1)(A) because "the language of the force clause in the [ACCA] and the reentry Guideline is identical." Aparicio-Soria, 740 F.3d at 154. --------

The three means of accomplishing a criminal assault under North Carolina law are (1) an attempted battery, (2) a show of violence, or (3) a completed battery. Vinson, 2015 WL 4430889, at *4. Under North Carolina law, battery is "an assault whereby any force, however slight is actually applied to the person of another directly or indirectly." State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 829 (1922) (emphasis added, quotation omitted); see State v. Hefner, 199 N.C. 778, 155 S.E. 879, 881(1930) ("[A] battery, which is the unlawful application of force to the person of another by the aggressor himself . . . ."); State v. Thompson, 27 N.C. App. 576, 577-78, 219 S.E.2d 566, 568(1975) (same).

Accordingly, a battery, whether completed or attempted, is not a "crime of violence" because it may be accomplished without the use of violent force. Lastly, an assault by a show of

7

violence, likewise does not require the use of violent force. Premises considered, Crawford's conviction for assault inflicting serious bodily injury is not a crime of violence. See Vinson, 2015 WL 4430889, at *4 (explaining elements of the three means of accomplishing assault) ; Aparicio-Soria, 740 F.3d at 154.

Without the necessary predicate crimes of violence to sustain his career offender designation, Mr. Crawford's sentencing guideline range would be 130-147 months' imprisonment. As of today's date, Crawford has served more than ten years in federal custody. When taken into consideration and in combination with the fact that his continued incarceration stands to serve no purpose other than to inflict an unwarranted sentencing disparity, the court should grant this motion and reduce Crawford's term of imprisonment.

**II.** _**The 18 U.S.C. § 3553(a) Factors Support A Reduction In Crawford's Sentence.**_

Upon a finding by the Court that extraordinary and compelling reasons exist that warrant a sentence reduction, it must then consider the applicable § 3553(a) factors to determine the appropriate degree of reduction. These factors are:

(a) Factors To Be Considered in Imposing a Sentence.— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
**(2)** the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical

8

care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant

is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553.

These sentencing factors are very important in the court's analysis when imposing a sentence. Importantly, evidence of post-conviction rehabilitation is likely one of the most critical and core considerations for the court in a § 3582 proceeding.

In *Pepper v. United States*, the Supreme Court emphasized the important nature of post-sentence rehabilitation; stating that "there would be no better evidence than a defendant's post

9

incarceration conduct." 562 U.S. 476 (2011). The Court further held, "post sentencing rehabilitation may also inform a sentencing judge's overarching duty under § 3553(a) to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.*

Sentencing criminal offenders should be fair and consistent. Similarly situated offenders should receive similar sentences that do not rest on such vagaries as whether the statutes under which they were previously prosecuted also proscribe less violent conduct.

The SRA places the avoidance of unwarranted disparity at the forefront of its directives to both the courts and the Commission. Among the factors courts must consider in the imposition of sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." While the statute expressly directs that courts "shall" consider this objective in their sentencing decisions, the accompanying directives to sentence within the applicable guideline range or depart from the range based on reasons stated on the record, together with the provision for appellate review, are the SRA's principal means of assuring that court sentencing decisions will further disparity reduction goals.

Furthermore, in keeping with the SRA's call for a progressive, evolving system of sentencing guidelines and policy statements, the Sentencing Commission was expected to glean important information from district court reasons for sentence and appellate court opinions that could assist in the continuing process of amending and improving the guideline system. Concerns for reasonable sentence uniformity, then, underlie both the day-to-day court application of the guidelines and their further development through the amendment process, based on the growing body of experience. Guideline amendments reflect this constant change in legal views.

Review of the Commission's statutory charter similarly reveals that "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" is a principal purpose of the Commission. The Commission is specifically directed, in crafting the guidelines and policy statements, to give "particular attention" to providing certainty, fairness, and reasonable uniformity in sentencing of similar offenders who commit similar crimes. At the same time, the SRA and its legislative history describe another central goal, punishment proportionality and appropriate individualization of sentence, that operates in constant tension with the objective of disparity avoidance. By prescribing a detailed guideline system that takes into account the most important and commonly occurring offense and offender characteristics, and by permitting courts to sentence outside the guidelines in cases with significant atypical features, the SRA seeks to reconcile competing goals of proportionality and uniformity.

During Crawford's custody within the FBOP, he has completed numerous programs and classes. Crawford's program participation and sincere desire to better himself is evident and favors the court's granting him a sentence reduction. Mr. Crawford has a supportive family that is prepared to assist him with transitioning back into society.

Crawford does not dispute or attempt to downplay the fact that the crimes he committed were very serious offenses. However, its noteworthy to point out the fact that reducing his term of imprisonment to a term consistent with the legal landscape as it stands today would not be diminishing the seriousness of his offenses; the court would merely be administering justice by following Congress' express directive to avoid unwarranted sentencing disparities.

The Court should reduce Crawford's sentence to be in line with the applicable guideline range of a person convicted and sentenced in federal court today. A sentence within the current guideline range is entirely appropriate to fulfill the § 3553(a) factors' important objectives.

11

## CONCLUSION – PRAYER FOR RELIEF

**WHEREFORE**, for the extraordinary and compelling reasons presented herein, Crawford prays this Honorable Court will **GRANT** this motion and order him resentenced under the appropriate guideline range under the Sentencing Guidelines without the inapplicable career offender enhancement. Crawford further prays the court will grant him any other form of relief he may be entitled to which the court deems just and appropriate.

Dated: January 29, 2022

Respectfully submitted,

Donavon Dewayne Crawford
Reg. No. 28354-057
OKC Federal Transfer Center
P.O. BOX 898801
OKC, OK 73189

Pro Se Defendant

12

## CERTIFICATE OF SERVICE

I, Donavon Dewayne Crawford, hereby certify that on this $27$ day of

_January_, 2022, a true and correct copy of the foregoing document was

deposited in the United States Mail with sufficient postage affixed thereon addressed to the

following:

Clerk, U.S. District Court
Middle District of North Carolina
324 West Market Street
Greensboro, NC 27401

Angela Hewlett Miller
Office Of U. S. Attorney
101 South Edgeworth Street, Fourth Floor
Greensboro, NC 27401

Donavon Dewayne Crawford
Reg. No. 28354-057
OKC Federal Transfer Center
P.O. BOX 898801
OKC, OK 73189

Attachments: (Exhibit # 1) – FBOP Request To Staff

13

INMATE REQUEST TO STAFF CDFRM

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| OKC Federal Transfer Center Warden | December 27, 2021 |
| FROM: DONAVON CRAWFORD | REGISTER NO.: 28354-057 |
| WORK ASSIGNMENT: N/A | UNIT: HOLDOVER |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I am submitting this request seeking a reduction in my sentence and/or compassionate release for extraordinary and compelling reasons under 18 USC § 3582(c)(1)(A). I was sentenced more than 10 years ago with a career offender enhancement that would not apply today. Also I have completed almost every program available through the BOP during my incarceration. Will you please consider me for a sentence reduction / compassionate release? Thank you.

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
PDF

(Exhibit #1)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER        SECTION 6

Case 1:12-cr-00039-WO   Document 71   Filed 02/15/22   Page 14 of 14